## HOMESTEAD ALLOWANCE ON WIFE'S DEMAND.

[Auglaize County Common Pleas Court.]

THE HOME BANKING COMPANY v. WASHINGTON HUFFMAN ET AL.

Decided, December, 1903.

*Homestead—As to Allowance in Lieu of, to a Married Woman Living Apart from her Husoand.*

A married woman, living separate and apart from her husband, unless by his fault, is not entitled to demand an allowance in lieu of homestead.

Ruling on application of defendant's wife for allowance in lieu of homestead.

This is an application by the wife of the defendant for an allowance in lieu of homestead out of the proceeds of the sale of lots mortgaged by husband wherein the wife did not join. She and her husband were not living together, and she had no child or children living with or supported by her. Contended by plaintiff that the homestead was abandoned, the evidence showing that the husband had left the wife, and that she subsequently left their home for another place, and consequently no allowance could be made in lieu of homestead. Contended by wife, on authority of *Kimmel* v. *Paronto,* 52 O. S., 468, that a married woman, living separate and apart from her husband, is entitled to allowance in lieu of homestead.

MATHERS, J.

Abandonment of a homestead means leaving it for the purposes of a home, *i. e.,* the actual quitting of the premises. If that is done no homestead can be claimed in that property (*McComb* v. *Thompson,* 43 O. S., 139). But there can be no abandonment, in the foregoing sense, of an allowance in lieu of homestead. Such an allowance necessarily implies that the parties have no homestead.

Section 5435, Revised Statutes, providing for a homestead exemption, allows the wife, if the husband fail or refuse to do so, to demand a homestead exemption, and this out of the husband's

property. The section seems to contemplate that the husband may refuse to make such demand. The object of this provision is to put it in the power of the wife to secure a home, where the family may be kept together, even if the husband, by reason of some hoped-for advantage by the grace of creditors, or by reason of a quixotic sense of honor, should determine to surrender all his possessions to satisfy the claims of his creditors. As it is to furnish a home for the family, the statute requires that husband and wife must be living together, or, failing that, that the demandant must be a widow or a widower living with an unmarried daughter, or an unmarried minor son, before the homestead can be allowed. In the case at bar none of these conditions exist.

In *Elliott* v. *Plattor,* 43 O. S., 198, 207, it was decided that circumstances somewhat similar to those in the case at bar would not entitle a married woman to a homestead. In that case she had gone to a distant part of the state, taking her children with her and leaving her husband, with the children by his former marriage, at their home. The other conditions would have permitted her to demand a homestead, but the court held that it was incumbent on her to show that this separation was not permanent, but only temporary, which she failed to do. In *Moerlein Brewing Co.* v. *Westmier et al,* 4 C. C., 296, 300, it was held that a married woman was not entitled to a homestad, when at the time of distribution of the funds claimed exempt, she and her husband were living separate and apart. The same point was decided in 13 Bull., 637, at General Term of the Superior Court of Cincinnati, though in that case the husband and wife were separated by judicial decree and he was paying her alimony.

It is claimed on behalf of Mrs. Huffman, that *Kimmel* v. *Paronto,* 52 O. S., 478, and *Shaw* v. *Foley, Assignee,* 62 O. S., 30, are decisive on the point in question, and should constrain the court to make this allowance to her. The decision in the latter case is an affirmation of the rule laid down in the former. In both, the wife claimed the exemption out of her own separate property. These cases were decided upon the theory that, as Section 5319 gives to a married woman the benefit of all exemptions allowed by law to heads of families, and as the homestead exemption is allowed by law to heads of families, a married woman may claim

a homestead (or $500 in lieu thereof), by reason of that statutory provision, whether she is, as a matter of fact, the head of a family or not. But this provision is expressly limited to suits against a married woman herself, and where her separate property is involved. Obviously it does not enlarge her rights with reference to her husband's property. This is all those cases determine. Mrs. Huffman claims this allowance out of her husband's property, and claims it on the theory that he having failed or refused to make the demand, she may do so. But as a condition, *inter alia,* to the granting of such a demand the husband and wife must be living together; or, if separated, it must be but temporarily and with the intention of again cohabiting, which is not the condition here. For the husband's desertion, if such it be, the wife has other remedies, but the creditors ought not to be mulcted. They ought not to be made to suffer loss perhaps for extending credit for necessaries for the husband and wife while they were living together. To permit that would be to permit the husband and wife to eat their cake and have it, too, which homely phrase expresses the legal absurdity as fully as it does the physical. It would appear unjust so to construe the statute as to permit a change of relationship between husband and wife, involving his permanent abandonment of her, to work such a result, especially when such construction necessarily does violence to the words of the statute. The rule enunciated in *Dittey* v. *Ellifritz,* 8 C. C., 278, certainly can not be meant to apply to the case of a wife whose husband has left her, and who has then returned to her former home, leaving the one she and her husband had been occupying, and this condition being permanent in the contemplation of the parties, and there being no children. In *Dittey* v. *Ellifritz, supra,* the wife unquestionably was entitled to a homestead, because she and the four children were living together. Or, if the report of that case is misleading in this respect—if they were not minor or unmarried children, and her right to the homestead had to be predicated upon cohabitation—still it seems from the opinion that the husband had fled, in order to avoid trouble with creditors and on account of a defalcation, and it could not be said that he had permanently abandoned his wife. Indeed, the court quote from Freeman on Executions (Section 248) to show that "the

desertion by a husband of his family, leaving them in the occupancy of the homestead, is not an abandonment" (of the homestead). So that it appears that the case turned on the point as to whether or not the husband had abandoned the homestead, and not on the question as to whether or not the husband and wife were living together; that the latter question was only incidentally involved, and that as the wife was without fault, and was occupying the homestead, she could not be deprived of the benefit of the homestead exemption, because the husband was derelict of duty, as such exemption is intended for her benefit, and that of the family, as well as his; and that the presumption in such circumstances is that he is a wanderer without a home until he returns to his duty and his family. In short, the effect of the decision is that husband and wife are to be considered as living together, within the meaning of the homestead laws, as long as nothing happens showing that the relation of husband and wife has been severed, either by judicial decree or permanent estrangement, and cohabitation has ceased. Both must concur.

In the case at bar, it appears the separation is permanent. If that be so, the demandant and her husband are not living together. If the Legislature had meant to extend the benefits of the homestead act to a wife in such circumstances, it certainly would have used some more apt expression than "husband and wife living together." While it is true that he "who sticks to the letter sticks in the bark" very frequently, yet the courts can not, without invading the province of the Legislature, extend the plain meaning of the words of a statute—can not say that the words, "husband and wife living together," mean "husband and wife living permanently separate and apart."

The application is denied.

*Culliton & Smith,* for plaintiff.

*F. C. Layton & Son,* for demandant.